**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ESTHER LESSLEY,<br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>　　　　　　　　　　　Defendant. | 3:15-cv-00096-HDM-VPC<br><br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

　　　This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Pending before the court is plaintiff's motion for remand or reversal (#9), defendant's cross-motion to affirm and opposition (#s 10/11), and plaintiff's reply and opposition (#s 12/13). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

　　　On August 13, 2012, Esther Lessley ("plaintiff") filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of September 1, 2011. (Administrative Record ("AR") 148–156.) The Social Security Administration denied plaintiff's application in the first instance on March 7, 2013, and upon reconsideration on July 10, 2013. (*Id.* at 120–24, 126–30.)

　　　On July 8, 2014 plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Janice Shave. (*Id.* at 33–54.) The ALJ issued a written decision on July 30, 2014, finding that plaintiff had not been disabled at any time between September 1, 2011 and the date of the decision. (*Id.* at 20–26.) Plaintiff appealed, and the Appeals Council denied review on December 14, 2014. (*Id.* at 1–4.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant"). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on March 18, 2015 (#3).

## II. STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence. "The ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision; it "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

*Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

**A.   SSDI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI.  20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the Commissioner denies the claim.  *Id.* § 404.1520(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe."  *Id.* § 404.1520(a)(4)(ii).  "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id.* § 404.1520(c).  The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments.  *Id.*

At step three, the claimant's impairment is compared to the impairments listed in the Agency's regulations.  *Id*. § 404.1520(a)(4)(iii); *see also id*. Pt. 404, Subpt. P, App. 1 ("List of Impairments").  The List of Impairments "define[s] impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted).  Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled.  20 C.F.R. § 404.1520(d). However, for an impairment to match a listing, "it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four.  There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id*. §

3

404.1520(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

In making the step four determination, the ALJ considers the claimant's RFC and the physical and mental demands of the work previously performed. 20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). To determine the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 404.1545(a)(3). The ALJ is not, however, required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-prong inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted). Second, if the first prong is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "[S]imply reciting the medical evidence in support of his or her [RFC] determination" will not suffice. *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015). The focus, however, is ultimately

1  upon the reviewing court. The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

Permissible bases for finding the claimant not credible include conflicts between the claimant's allegations and daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when weighing the credibility of subjective complaints. 20 C.F.R. § 404.1529(c); *Rollins*, 261 F.3d at 857.

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert ("VE"). *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, the claimant is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id*. § 404.1520(g).

**B.      The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claim, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since September 1, 2011, the alleged onset date. (AR 22.) At step two, she concluded that plaintiff's status-post right total hip replacement with hardware placement and her multilevel degenerative disc disease of the lumbar spine were severe impairments. (*Id.*) Although the record also contained evidence of acute depression and grief, the ALJ found that these symptoms were attributable to the death of plaintiff's husband and not likely to last at least twelve consecutive months. (*Id.*) Accordingly, plaintiff's mental impairments were not severe.

The ALJ next considered whether plaintiff's severe impairments met or medically equaled any impairment on the List of Impairments, focusing on the musculoskeletal impairments in section 1.00. (*Id.* at 21–22.) Despite plaintiff's subjective pain allegations, the ALJ concluded that the evidence of record did not satisfy the criteria for any listing. (*Id.* at 22.) A finding of disability was not, therefore, directed at step three.

The ALJ made several findings at step four. To begin, she concluded that plaintiff's RFC would permit her to perform light work as defined by 20 C.F.R. § 404.1567(b), with the following additional limitations: "never climbing ladders, ropes, or scaffolds; never kneeling, crawling, or climbing stairs; occasional stooping, crouching, or climbing ramps; no right-sided overhead pushing/pulling with resistance; and occasional right-sided overhead reaching. The claimant must avoid concentrated exposure to extreme heat/cold, vibration, unprotected heights, and hazardous/moving machinery." (*Id.* at 23.) Next, the ALJ found that plaintiff's impairments could be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. (*Id*. at 24.) In so concluding, she reviewed the medical evidence of record, plaintiff's course of treatment, and plaintiff's statements and reported activities. (*Id.* at 23–25.) Finally, the ALJ held that plaintiff was capable of performing her past relevant work as a vending machine attendant, as actually performed and as generally performed. (*Id.* at 25–26.) The ALJ reached this conclusion by

reviewing the record and the VE's testimony, by comparing plaintiff's RFC to the demands of the position. (*Id.* at 26.)

The ALJ concluded her analysis at step four. Because plaintiff could perform past relevant work, the ALJ held that plaintiff was not disabled and denied her claim for SSDI benefits. (*Id*. at 25.)

**C.     The ALJ permissibly relied on the VE's testimony in finding that plaintiff could perform her past relevant work.**

Plaintiff worked as a slot host from 2003 to 2011. (AR 207.) Her duties included making change, paying off jackpots, stocking the refrigerator with water and soda, and cleaning the machines. (*Id.* at 209.) Although the position does not appear in the *Dictionary of Occupational Titles* ("DOT"), it is similar to a vending machine attendant. (*Id.* at 51.) According to the DOT, a vending machine attendant places food or drink items on the machine shelves, changes shelf labels, uses hand tools to perform minor repairs or adjustments, and cleans the interior and exterior of the machines. DICOT 319.464-014, *available at* 1991 WL 672766. The DOT specifies that frequent reaching is required to carry out these tasks. *Id.* Despite that, the VE testified that an individual who was limited to only occasional overhead reaching on her right side could perform the work of a vending machine attendant. (AR 23, 52.)

Pursuant to Social Security Ruling ("SSR") 00-4p, an ALJ has an affirmative responsibility to ask a VE about "any possible conflict" between his or her testimony and the DOT. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). In *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), the Ninth Circuit interpreted the rule to preclude an ALJ from relying on a VE's testimony without first asking whether a conflict existed. Further, where there is an apparent conflict between the testimony and the DOT, the ALJ must obtain a reasonable explanation from the VE. *Id.* at 1153. An ALJ's failure to take either step is harmless only a reviewing court concludes that no actual conflict exists, or if the VE's testimony included sufficient support to justify the conflict. *Id.* at 1154 n.19.

Here, as the VE's testimony does not acknowledge or explain any potential conflict with the DOT, the court must determine whether an actual conflict exists. Plaintiff argues that there is

7

1  a conflict, and that the ALJ's failure to identify and resolve the conflict is reversible error. (#9 at
2  12–14.) Defendant counters that there is no conflict because the DOT does not specify that the
3  reaching must occur overhead or with both arms. (#10 at 5.)

4  As used in the DOT, reaching involves "[e]xtending hand(s) and arm(s) in any direction."
5  Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of*
6  *Occupational Titles* C-3 (1993). From this definition, two issues emerge: (1) whether a job
7  description that requires frequent reaching, but is silent as to how the reaching is to be performed,
8  requires a claimant to be able to reach with both arms; and (2) whether a requirement of frequent
9  reaching requires a claimant to be able to reach overhead. Within the Ninth Circuit, there is no
10 consensus or binding precedent as to either issue.

11 Plaintiff cites a District of Arizona case in which the Commissioner argued, as she does
12 here, that no conflict existed because the DOT job descriptions did not explicitly require overhead
13 reaching with both arms, and because the claimant had full use of his arm. *Marquez v. Astrue*,
14 No. CV–11–339–TUC–JGZ–DTF, 2012 WL 3011778, at *2 (D. Ariz. May 2, 2012). The
15 *Marquez* court disagreed, reasoning that the DOT descriptions are broad, and it is not for a court
16 to guess whether a conflict exists. *Id.* at *3. Instead, "the ALJ is required to gather the necessary
17 evidence from a VE and explain how the inconsistency is resolved." *Id.* However, *Marquez* is in
18 the minority. Other district courts, including those in this district, have generally found that a
19 claimant with limited use of one arm is not precluded from performing a job with frequent
20 reaching, unless the DOT job description explicitly requires bilateral reaching. *See, e.g.*, *Black v.*
21 *Colvin*, 2015 WL 6082081, at *8 (D. Nev. Oct. 14, 2015) (reasoning that the definition of
22 "reaching" contemplates the use of just one arm, as well as the use of both, as evidenced by the
23 placement of the plural in parentheses); *Mendoza v. Colvin*, No. 2:14–cv–00825–GMN–GWF,
24 2015 WL 4572321, at *3 (D. Nev. July 29, 2015) (finding that any conflict between the inability
25 to reach with one arm and a frequent reaching requirement in perform housekeeping duties "is not
26 sufficiently apparent" to require the ALJ to question the VE); *Rimmer v. Colvin*, No. 2:14–cv–
27 1355–JAD–VCF, 2015 WL 2186018, at *7 (D. Nev. Apr. 28, 2015) (finding the DOT's language
28 to be ambiguous and upholding the ALJ's interpretation); *Lamear v. Colvin*, No. 3:13–cv–01319–

AC, 2014 WL 6809751, at *2 (Dec. 1, 2014) (noting that every court within the District of Oregon has found no conflict between a limitation on handling, fingering, and reaching with one hand and a DOT job description that requires frequent handling, fingering, or reaching generally); *Sims v. Colvin*, Case No.: 13–CV–01755–LHK, 2014 WL 3362286, at *7, *7 n.3 (N.D. Cal. July 7, 2014) (distinguishing reaching with both arms from reaching overhead, and finding it "conclusively resolved by case law" that reaching does not require the use of both arms); *Nelson v. Astrue*, No. C-10-0101 EMC, 2010 WL 4286316, at *3 (N.D. Cal. Oct. 22, 2010) (finding an "arguable" but not "apparent" conflict between a claimant's inability to reach overhead with left dominant arm and the reaching requirement for a ticket seller or food/beverage clerk).

As defined, "reaching" more clearly encompasses overhead reaching. *Mikhitaryan v. Astrue*, No. CV 09–6971–SH, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010). Accordingly, where a claimant is precluded from reaching overhead with both arms, courts are more likely to find an inherent conflict with a DOT job description that requires frequent reaching. *See, e.g.*, *McCabe v. Colvin*, 2015 WL 4740509, at *11 (D. Nev. Aug. 10, 2015); *Richardson v. Astrue*, No. 11–CV–1332–LHK, 2012 WL 5904733, at *6–*7 (N.D. Cal. Nov. 26, 2012); *Lovings v. Colvin*, No. EDCV 13–1847 JC, 2014 WL 2159394, at *4–*5 (C.D. Cal. May 23, 2014) (noting disagreement among district courts and collecting cases). Such cases are distinguishable from the facts at hand. Plaintiff testified that her left shoulder "is starting to act up" (AR 45), but her ability to reach "in any direction" with her left shoulder and arm is not otherwise restricted (*id.* at 23). The DOT does not state that both arms must be used in carrying out duties of a vending machine attendant, nor do the duties described necessarily require the use of both arms. *See* DICOT 319.464-014, *available at* 1991 WL 672766. Further, that plaintiff was able to continue working as a slot host immediately after undergoing shoulder surgery strongly suggests that the position does not require her to reach overhead with both arms. (AR 40.)

Given plaintiff's full use of her left arm, the court concludes that there is no conflict between the VE's testimony and the DOT. Accordingly, the requirements of SSR 00-4p were not triggered, and the ALJ permissibly relied on the VE's testimony in determining that plaintiff could perform her past relevant work.

**D.     The ALJ properly evaluated plaintiff's subjective pain and limitations testimony.**

Plaintiff also challenges the ALJ's credibility assessment, arguing that the ALJ failed to articulate legally sufficient reasons for discounting plaintiff's subjective pain allegations. The ALJ cited four reasons for her adverse credibility finding: (1) a lack of strong support from the objective medical evidence; (2) the "wide range" of plaintiff's daily activities; (3) plaintiff's conservative course of treatment, including gaps in treatment; and (4) that plaintiff was terminated from her job for non-medical reasons. (AR 21–24.) The court considers each in turn.

First, a lack of support from objective medical evidence is a "clear and convincing" reason to discredit plaintiff's testimony. Notably, plaintiff does not point to any errors in the ALJ's analysis of the evidence. Instead, she relies on the rule that a claimant's symptoms testimony "may not be disregarded solely because [it is] not substantiated by objective medical evidence." (#9 at 17–18; #13 at 6.) Plaintiff cites the relevant precedent and regulations, but misses their meaning. It is well established that a lack of support from the objective medical evidence cannot be the *sole* basis for discounting a claimant's credibility, but the ALJ may properly consider it among other factors. *Burch*, 400 F.3d at 681; 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1995 WL 670415 (Oct. 31, 1995). Here, the ALJ identified three additional reasons that plaintiff's testimony was not fully credible; so long as those reasons are sound, there is no error.

Second, contrary to plaintiff's assertions, an ALJ may properly consider a claimant's daily activities as part of a credibility analysis. 20 C.F.R. § 404.1529(c)(1). A claimant's ability to complete household activities will not preclude a finding of disability, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), and the Ninth Circuit has warned ALJs to "be especially cautious in concluding that daily activities are inconsistent with pain and testimony, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," *Garrison*, 758 F.3d at 1016. Still, there are two ways in which a claimant's daily activities may lead to an adverse credibility determination: (1) if the claimant's activities contradict his or her testimony; or (2) if the claimant's activities meet the threshold for transferable work skills. *Orn*, 496 F.3d at 639. Here, plaintiff's daily activities are inconsistent with the extent of her alleged

pain and limitations.[1]  Plaintiff testified that she applied for social security benefits because she "knew that [she] physically could not work again." (AR 39.)  She alleged "constant" pain in her right shoulder, lower back, and right leg; weakness in her knees and right ankle; problems with her hip; and an inability to lift, concentrate, sit for longer than fifteen minutes, walk for longer than forty-five minutes, or bend at the knees or waist. (*Id.* at 45–50.)  The ALJ noted that, "[d]espite these allegations," plaintiff reported being able to clean her house, cook daily meals, do laundry, water the plants, do yardwork twice a week, go grocery shopping, drive a car, care for and play with her dogs, and act as a full-time caretaker for her disabled husband. (*Id.* at 44–45, 191–98.)  Caring for her husband included helping him go to the bathroom, bathing him, and dressing him. (*Id.* at 45.)  Although plaintiff reported some difficulty carrying out these activities (*id.* at 192–95), there is substantial evidence in the record to support the ALJ's determination.

Third, the ALJ permissibly cited the conservative nature of plaintiff's pain treatment.  Plaintiff challenges the ALJ's rationale on the basis that the gaps in treatment are explained by plaintiff's lack of insurance and inability to pay. (#9 at 19.)  The court agrees that, under the circumstances, a gap in treatment is not a clear and convincing reason discount plaintiff's credibility. *Orn*, 495 F.3d at 638.  However, the ALJ could properly infer that because plaintiff's impairments were managed by "conservative treatment modalities," her allegations of disabling pain were less credible. (AR 25.)  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment."); *Tommasetti*, 533 F.3d at 1039–40 (finding that the claimant's positive response to physical therapy, anti-inflammatory medication, and other conservative treatments undermined his reports of disabling pain).  As the ALJ discussed, plaintiff's neck, shoulder, and head pain greatly improved with daily chiropractic treatments following her automobile accident in July 2012. (AR 24.)  Records from September 2011, June 2013, and the

---

[1] Plaintiff's activities arguably "involve the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, the ALJ must make specific findings regarding the transferability of daily activities to properly conclude that they warrant an adverse credibility finding. *Orn*, 495 F.3d at 639.  As such findings are missing, transferability cannot be the basis for the ALJ's conclusion.

spring of 2014 also indicate that plaintiff's pain was adequately managed with prescription medication. (*Id.* at 24–25.)

The ALJ's final reason, however, was not clear and convincing. As the ALJ noted, plaintiff stopped working when she was terminated from her job for "non-medical reasons." (AR 25.) The Ninth Circuit has held that circumstances may permit an ALJ to discount a claimant's credibility if he stopped working because he was laid off, rather than due to his injury. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The facts of *Bruton*, however, are quite different from those presented here. There, the claimant alleged a disability onset date identical to the date he was laid off. *Id.* He claimed that he had stopped working for medical reasons, but waited nine months to seek medical treatment, and told his doctors that he had left his job because he was laid off. *Id.* Here, in contrast, plaintiff never claimed that her termination was related to her disability. (AR 36–37.) In addition, she stopped working in January 2011, approximately nine months before her alleged onset date. (*Id.* at 36.) The ALJ fails to acknowledge that gap,[2] or to explain how plaintiff's termination weighs against her credibility. Defendant argues that the ALJ reasonably found plaintiff less credible because plaintiff had received unemployment benefits and continued to look for work through September 2012. (#10 at 10.) Other courts have approved such a rationale. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (holding that receipt of unemployment benefits is inconsistent with a claim of disability if plaintiff held him or herself out as available to work full-time). However, it is one that has been articulated only by defendant, and not by the ALJ. (#10 at 10; AR 25.) The court "may not affirm the ALJ on a ground upon which [she] did not rely." *Orn*, 495 F.3d at 630.

While plaintiff's gaps in treatment and termination from her job are not clear and convincing reasons to discount her testimony, the ALJ's error is harmless in light of the other

---

[2] The ALJ incorrectly states that plaintiff "was terminated form [sic] her job at the alleged onset date . . . ." (AR 24.)

12

reasons cited in support of her credibility finding. *See Carmickle*, 533 F.3d at 1162 (finding harmless error where two of the four reasons cited for an adverse credibility finding were not clear or convincing). The ALJ's remaining reasons are clear, convincing, and based on substantial evidence. Thus, the court finds that reversal of the ALJ's decision is not warranted.

### III. CONCLUSION

In light of the record and arguments, the court concludes that substantial evidence in the record supports the ALJ's determination of nondisability. The ALJ did not err in relying on the VE's testimony to conclude that plaintiff could perform her past relevant work, or in discounting plaintiff's subjective pain testimony. Consequently, the court recommends that plaintiff's motion for remand (#9) be denied and that defendant's cross-motion to affirm (#10) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#9) be **DENIED** and defendant's cross-motion to affirm (#10) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: November 13, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**